IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EVA CHAVEZ,

        Plaintiff,

vs.                                                                  No. CIV 02-0339 WDS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on April 29, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for supplemental security income. The Court, having considered Plaintiff's Motion [docket # 23] and Memorandum Brief [docket # 24], Defendant's Response [docket # 31], Plaintiff's Reply [docket # 32], the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### I. Background

Plaintiff, who was born on August 10, 1961, was employed as a parts assembler and a babysitter prior to the onset of her alleged disability. Tr. 91. On September 24, 1999, Plaintiff sustained fractured bones in her right foot when she was involved in an automobile accident. Tr. 157, 177. Plaintiff also suffers anxiety and depression, and hears voices and sees shadows. Tr. 37.

Plaintiff protectively filed her initial application for supplemental security income ("SSI") under Title XVI of the Social Security Act on February 1, 2000. Tr. 78-83. Plaintiff alleged that she

became unable to work as a result of her disabling conditions on January 1, 1999. Tr. 79. After Plaintiff's application was denied at the initial level, Tr. 59-62, and at the reconsideration level, Tr. 65-67, Plaintiff appealed by filing a request for hearing by an administrative law judge ("ALJ") on September 28, 2000, Tr. 68.

The hearing before the ALJ was held on May 20, 2001, at which Plaintiff appeared and was represented by an attorney. Tr. 28-56. In a decision dated May 15, 2001, the ALJ denied Plaintiff's claims for SSI. Tr. 15-25. Plaintiff then filed a request for review with the Appeals Council on July 13, 2001. Tr. 11. The Appeals Council denied Plaintiff's request for review on February 1, 2002, Tr. 8-9, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. § 416.1481

On March 25, 2002, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 1383(c)(3). After consent by the parties, this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on February 24, 2004 [docket # 34].

## II. Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988); 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform

an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her SSI application. Tr. 17. The ALJ found at step two that Plaintiff has severe impairments of regional pain syndrome of her lumbar spine and the residuals of a fractured bone in her right foot. *Id.* The ALJ also found at step two that Plaintiff did not have severe mental impairments, *id.*, and that her hypothyroidism and osteopenia were not severe, Tr. 20. At step three, the ALJ found that Plaintiff did not have any impairment severe enough to meet or medically equal any Listed Impairment. Tr. 20. The ALJ determined at step four that Plaintiff retains the residual functional capacity to perform sedentary work, but could not perform her past relevant work. Tr. 22. At step five, the ALJ relied upon the grids to find that Plaintiff is not disabled. Tr. 23. Plaintiff contends that the ALJ erred at steps two and four.

### IV.  Discussion

#### A.  Whether The ALJ Erred At Step Two When He Found That Plaintiff Does Not Have A Severe Mental Impairment

Plaintiff's contention that the ALJ erred at step two of the sequential five-step analysis when he concluded that Plaintiff does not have a severe mental impairment appears to be twofold. I will address each part of Plaintiff's argument in turn below.

##### 1. Whether the ALJ Erred in Discounting Opinions by Dr. Grey Leyba

In concluding that Plaintiff did not suffer a severe mental impairment, the ALJ discussed several reasons why he did not find Plaintiff's testimony credible. Among other things, the ALJ

4

discounted a letter written by Dr. Grey Leyba that is dated November 30, 2000. Dr. Leyba wrote that Plaintiff was currently under his care, and was being treated for recurrent major depression and post traumatic stress disorder. Tr. 232. Dr. Leyba also wrote that Plaintiff's symptoms were "both persistent and severe," and resulted in "<u>marked</u> restriction of activities of daily living, in maintaining social functioning, severe deficiencies of concentration, and repeated episodes of decompensation in work-like settings which cause her to both withdraw from the situation and to experience severe exacerbation of symptoms." *Id.* (emphasis in original). Dr. Leyba concluded by stating that in his opinion, Plaintiff "is not capable of obtaining and maintaining gainful employment at this time or in the foreseeable future." *Id.* Plaintiff disputes each of the ALJ's reasons for discounting Dr. Leyba's opinions expressed in this letter.

Initially, I note that a treating physician's opinion that a patient is disabled, or cannot work, is not a medical opinion and is not entitled to any special significance. 20 C.F.R. § 416.927(e)(1), (3). These kinds of opinions are "not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994). I therefore find that the ALJ could properly reject Dr. Leyba's opinion that Plaintiff could not obtain or maintain gainful employment at present or in the foreseeable future. The issue before the Court, therefore, is concerned with the weight that should have been accorded to Dr. Leyba's other opinions.

An ALJ must give controlling weight to a treating physician's medical opinions if they are well-supported and "not inconsistent with other substantial evidence in the record." *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002). "Well-supported" refers to opinions that are supported "by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §

416.927(d)(2). A physician's opinions that are not supported with medically acceptable clinical and laboratory diagnostic techniques are not entitled to controlling weight. *See Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Likewise, if treating source opinions are inconsistent with other substantial evidence in the record, they are not entitled to controlling weight. *Id.*

One of the ALJ's reasons for discounting Dr. Leyba's letter appears to be that Dr. Leyba's opinions are not well-supported. In this regard, the ALJ stated that he could not accept Dr. Leyba's assessments on face value because Dr. Leyba made only generalized statements about Plaintiff's level of functioning, and did not even address all of Plaintiff's diagnoses. Tr. 18. In her opening brief, Plaintiff clarifies that Dr. Leyba is her treating psychiatrist at the University of New Mexico Mental Health Center ("UNMMHC"). As such, she contends that Dr. Leyba was not required to support the opinions expressed in his letter because they are supported by Plaintiff's treatment records from UNMMHC. Defendant responds that an impairment that can reasonably be controlled with treatment cannot be the basis of a disability award. Thus, Defendant contends that Plaintiff's treatment records actually support the ALJ's determination that Plaintiff did not have a severe mental impairment because her records show that her mental condition significantly improved when she took her medication at proper dosage levels. In her reply, Plaintiff asserts that the ALJ did not link her mental impairments with incorrect medication dosages, and contends that Defendant cannot support the ALJ's decision with reasoning that was not utilized by the ALJ.

I agree with Plaintiff that the ALJ's decision must be evaluated solely on the reasons provided in the ALJ's decision. *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168-69 (1962) ("courts may not accept appellate counsel's *post hoc* rationalizations for agency action; . . . an agency's discretionary order [must] be upheld, if at all, on the same basis articulated by the agency

6

itself."); *Miller v. Barnhart,* 2002 U.S. App. LEXIS 14782 (10th Cir. 2002).  Because the ALJ does not appear to have discounted Dr. Leyba's opinions based on the rationale that Plaintiff's impairment could be controlled with treatment, I will not consider Defendant's argument. The first question is simply whether Dr. Leyba's opinions are well-supported and thus entitled to controlling weight.

In his letter dated November 30, 2000, Dr. Leyba stated that Plaintiff's symptoms, which he characterized as "both persistent and severe," resulted in "<u>marked</u> restriction of activities of daily living, in maintaining social functioning, severe deficiencies of concentration, and repeated episodes of decompensation in work-like settings which cause her to both withdraw from the situation and to experience severe exacerbation of symptoms."  Tr. 232.  However, Dr. Leyba did not provide any basis for the conclusions in his letter, and I disagree with Plaintiff's contention that his failure to do so is irrelevant given the details contained in his separate treatment records.  The problem with Plaintiff's contention is that, although Plaintiff's records of treatment do contain specific details about her mental condition, it is impossible to ascertain specifically what information Dr. Leyba relied upon in reaching the conclusions stated in his letter.  Indeed, Dr. Leyba was not the only counselor who treated Plaintiff at UNMMHC during the relevant time period, for in addition to Dr. Leyba's signature, several other persons signed Plaintiff's records of treatment at UNMMHC.  This further confuses the issue of what information Dr. Leyba relied upon in reaching his conclusions.  Accordingly, I find that Dr. Leyba's letter was not entitled to controlling weight because I cannot determine whether his opinions are supported by medically acceptable clinical and laboratory diagnostic techniques.

Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference.  *Watkins v. Barnhart,* 350 F.2d 1297, 1300 (10th Cir. 2003) (citing SSR 96-2p).

However, the ALJ gave "little weight" to Dr. Leyba's opinions for several reasons, and Plaintiff disputes the validity of each of the ALJ's reasons for discrediting Dr. Leyba's opinions.

First, the ALJ discounted Dr. Leyba's opinions because his letter was based "primarily on the claimant's self-report of symptoms as related to him or other doctors. No formal testing was ever performed." Tr. 18-19. Plaintiff contends that the ALJ's decision is contrary to law because applicable regulations indicate that medical evidence consists, among other things, of complaints presented by the individual. Defendant responds that, while a claimant's reported symptoms must be considered in evaluating the severity of an impairment, the symptoms must be corroborated by objective evidence and they are not in this case. Specifically, Defendant contends that Plaintiff's complaints are not corroborated because her symptoms improved with proper medication dosages.

I find that Plaintiff's argument fails to address the pertinent question. I agree that an ALJ must consider a claimant's reported symptoms. *See* 20 C.F.R. §§ 416.928(a), 416.929(a). However, it is clear that a claimant's report of symptoms alone is not enough to establish disability; in addition to a claimant's statements, "there must be medical signs and laboratory findings which show that [the claimant] has a medical impairment(s) . . . ." 20 C.F.R. § 416.929(a). Dr. Leyba's letter does not identify any medical signs or laboratory findings that support his conclusions. As I have previously noted, the fact that he failed to identify any supporting evidence in his letter is problematic because I cannot ascertain what information he relied upon in reaching his conclusions. I therefore find that the ALJ was entitled to accord the opinions stated in Dr. Leyba's letter less weight on the ground that Dr. Leyba failed to identify corroborating medical signs or laboratory findings. *See* 20 C.F.R. § 416.927(d)(3) (more weight is given to an opinion when the medical source presents medical signs and laboratory findings, and when the medical source provides an explanation for the opinion).

8

Second, the ALJ disputed Dr. Leyba's opinion that Plaintiff's concentration was severely impaired, and his opinion that Plaintiff had repeated episodes of decompensation in work-like settings, because the ALJ believed the record showed no evidence of these things. Tr. 19. However, Plaintiff asserts that the record is replete with Plaintiff's reports of suicidal and homicidal feelings, auditory hallucinations, and inability to leave the house, and these symptoms are a detriment to the ability to concentrate and also comprise decompensation in a work-like setting. Defendant responds that Plaintiff's hallucinations decreased to only intermittent frequency when she took proper dosages of medication. Defendant also asserts that the record does not contain references to Plaintiff wanting to harm herself during the relevant time period. I agree with Plaintiff that the ALJ should not have discounted Dr. Leyba's opinions on this ground, for some of Plaintiff's symptoms documented in the record do suggest impairment of concentration and decompensation in work-like settings. For example, on March 2, 2000, Plaintiff's records indicate that she was hearing voices, and that her husband was afraid she would hurt their children. Tr. 194. Her records from January 8, 2001 indicate that she has chronic thoughts of suicide, and chronic thoughts of harming others. Tr. 254. On February 8, 2001, Plaintiff's records reflect that she was losing her temper with her children, was having hallucinations, and memory problems. Tr. 253. Given this evidence, I agree with Plaintiff that the ALJ erred when he found there was no evidence that Plaintiff suffered impairments in concentration and decompensation in work-like settings.

Third, the ALJ discredited Dr. Leyba's opinions because he found that Plaintiff "admitted medical improvement and normal or near normal levels of functioning during some of her visits," which Dr. Leyba did not discuss. Tr. 19. Plaintiff contends that this was not a sufficient basis to discount Dr. Leyba's opinions, for it fails to account for the fact that mental impairments can have

9

periods of remission. I agree, as courts have recognized that persons with mental impairments are not necessarily impaired all of the time. *E.g., Roberts v. Chater,* 971 F.Supp. 498, 501 (D.N.M. 1997).

Finally, the ALJ wrote that he gave little weight to Dr. Leyba's opinions because he appeared "to be acting more as an advocate for the claimant, rather than a doctor, by his exaggeration of her functional limitations." Tr. 19. However, it is well-settled that an ALJ should not reject the opinion of a treating physician on the ground that a doctor is likely to be an advocate for his or her patient. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987); *McGoffin v. Barnhart,* 288 F.3d 1248, 1253 (10th Cir. 2002); *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

In view of the foregoing discussion, I have found that the only valid reason articulated by the ALJ for discounting the opinions expressed in Dr. Leyba's letter are that Dr. Leyba failed to identify medical signs or laboratory findings, shown by medically acceptable clinical and laboratory diagnostic techniques, that supported his opinions. However, I do not think this finding, standing alone, was sufficient for the ALJ to discredit Dr. Leyba's opinions. One of the Commissioner's Rulings provides that even if a treating physician's opinions are not entitled to controlling weight, the "opinions are still entitled to deference and must be weighed using *all* of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p (emphasis added); *see also Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) (citing factors an ALJ must consider to determine what weight to give a treating source opinion). Factors enumerated in the applicable regulation include the following. The length of the treatment relationship and the frequency of examination should be considered, as the longer a claimant has been treated and the more times the claimant has been seen, the more weight the adjudicator is required to give the treating source's opinion. 20

C.F.R. § 416.927(d)(2)(i).  An ALJ should also consider the treatment that was provided and the kinds of tests the doctor performed or ordered.  20 C.F.R. § 416.927(d)(2)(ii).  In addition, the ALJ should give more weight to the opinion of a specialist on issues within his specialty than opinions by sources who are not specialists.  20 C.F.R. § 416.927(d)(3).  The ALJ in this case, however, failed to consider these factors in his decision.  I find that his failure to do so constitutes error, and on remand, the ALJ should consider all of the applicable factors in order to determine what weight Dr. Leyba's letter should be assigned.

### 2.  Whether the ALJ's Determination That Plaintiff Does Not Have a Severe Mental Impairment is Supported by Substantial Evidence

Plaintiff also contends that the ALJ's determination that she does not have a severe mental impairment is not supported by substantial evidence.  As support, Plaintiff recites various notes from the record that she contends establish the existence of a severe mental impairment.  Defendant responds by citing contrary evidence.

A claimant is only required to make a *de minimis* showing of medical severity in order to meet his or her burden of proof at step two.  *E.g., Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1988). Thus, an ALJ may find that an impairment is not severe only if medical evidence establishes that the claimant's impairment has no more than a minimal effect on his or her ability to perform basic work activities. SSR 85-28.  Basic work activities means "the abilities and aptitudes necessary to do most jobs," and includes physical functions as well as "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.921.  If the claimant makes a *de minimis* showing of medical severity, the ALJ must proceed to step three of the sequential five-step analysis.  *Williams,* 844 F.2d at 751.  In

light of this standard, I find that the ALJ's step two determination is not supported by substantial evidence.

As support for his step two determination that Plaintiff does not have a severe mental impairment, the ALJ noted that Plaintiff sought treatment for depression, nervousness and anxiety in January 2000. The ALJ apparently discounted the severity of her symptoms based upon the fact that a mental status test on that occasion showed that she had a sense of humor, normal speech, organized, linear thought, and normal affect. Tr. 17. However, the ALJ ignored the fact that on that same date, Plaintiff was assigned a GAF score of 50. Tr. 201. A GAF score measures an individual's overall level of psychological, social and occupational functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000). The description for persons whose GAF score falls between 41 and 50 is as follows:

> Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job).

*Id.* at 34. A GAF rating of 50 would seem to indicate that Plaintiff's mental impairments had more than a minimal effect on her ability to perform basic work activities during the period under review. Yet, the ALJ did not discuss this evidence.

The ALJ also discounted Plaintiff's claim of depression and anxiety in January 2000 on the following grounds. Because Plaintiff stated that her depression had increased with the death of her father and a cousin, the ALJ concluded that Plaintiff's depression and anxiety were situational in nature. Tr. 17. The ALJ also wrote that Plaintiff never mentioned these deaths before, her father's death was quite remote in time, and Plaintiff had not sought psychological help or counseling to deal with the deaths. *Id.* However, since I see nothing in the record that would indicate that the sole

12

cause of Plaintiff's depression was the deaths of her family members, I do not think it is reasonable to dismiss Plaintiff's complaints of depression and anxiety as solely "situational in nature." Indeed, a note in Plaintiff's January 19, 2000 psychological assessment indicates that she suffered "longterm depression." Tr. 201. Moreover, the ALJ's assertion that Plaintiff had not sought counseling to deal with the deaths is rather incongruous in view of the fact that the very records cited by the ALJ indicate that Plaintiff discussed the deaths in her counseling sessions. *See id.*

As further support for his decision, the ALJ noted that on various occasions, Plaintiff stated that she "guessed she was doing o.k.," was doing "better," was "very well," and was "much better." Tr. 17-18. However, on January 31, 2000, Plaintiff's counselor rated her as "markedly ill" despite her comment on the same date that she was "doing o.k., I guess." Tr. 225. A complete review of the record, therefore, indicates that the ALJ should not have taken Plaintiff's comments to the effect that she was doing "okay" to mean she did not have a severe mental impairment.

The ALJ also cited as support for his decision the fact that Plaintiff's UNMMHC records indicate on two occasions that she was rated as only "mildly" ill. Tr. 17. The ALJ also noted that, although Plaintiff was diagnosed with major depression and post-traumatic stress disorder ("PTSD") in January 2000, she was considered "only moderately ill." Tr. 17. However, if a patient suffering major depression and PTSD receives a rating of "moderately ill," that would logically seem to indicate that a rating of "moderately ill" is fairly serious. The ALJ also failed to mention the fact that in the year 2000, Plaintiff was rated as "moderately ill" on January 24, February 7, February 21, March 2, March 16, April 6, April 20, and May 11, and was rated as "markedly ill" on January 31 and June 5. Tr. 216-26.

In view of the foregoing discussion, the Court finds that the ALJ discussed the evidence he

13

believed supported his decision, but failed to discuss other relevant evidence that did not support his decision.  For example, Plaintiff received a GAF rating of 50 on two occasions in January 2000. Tr. 198, 201.  A GAF rating of 50 would seem to indicate that Plaintiff's mental impairments had more than a minimal effect on her ability to perform basic work activities during the period under review. At the very least, I find that Plaintiff's GAF score provides significantly probative evidence relating to her ability to perform basic work activities.  Yet, the ALJ never discussed this evidence in his step two analysis.  Nor did the ALJ discuss the fact that, during the majority of the relevant time period, Plaintiff was rated as "moderately ill" and also received two ratings of "markedly ill."  I find that the ALJ's failure to discuss all significantly probative evidence constitutes legal error, for "in addition to discussing the evidence supporting his decision, the ALJ must also discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Accordingly, on remand the ALJ must consider and discuss all significantly probative evidence, including  Plaintiff's illness ratings and GAF score, in his step two analysis.  If the ALJ determines on remand that Plaintiff had a severe mental impairment at step two, he must proceed with the remaining steps in the sequential five-step analysis.

### B.  Whether The ALJ Erred At Step Four When He Found That Plaintiff Can Perform Sedentary Work Without Considering Her Need To Elevate Her Foot

At step four of the sequential analysis, the ALJ was required to assess Plaintiff's physical and mental RFC and then determine whether, in light of that RFC, Plaintiff could perform her past relevant work.  *See Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996).  Plaintiff contends that the ALJ erred at the first phase of the step four inquiry when he assessed her RFC.  At the hearing before the ALJ, Plaintiff testified that she needs to elevate her foot because it throbs and hurts. Tr.

40. Yet, the ALJ found that Plaintiff can perform a full range of sedentary work, Tr. 22-24, which requires the following:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). Plaintiff contends that the ALJ failed to adequately develop the record in that he should have re-contacted Plaintiff's treating physicians and asked them about Plaintiff's need to elevate her foot before concluding that she can perform sedentary work. Defendant responds that, since Plaintiff's asserted need to elevate her foot is not supported by complaints to her physicians or any restrictions prescribed by her doctors, her bare allegation that she needs to elevate her foot did not give rise to a duty for the ALJ to develop the record. In her reply, Plaintiff asserts that "references to swelling" in the record support her testimony that she needs to elevate her foot. However, I note that two of the four "references to swelling" Plaintiff cites occurred within three months of the date when she fractured her foot. Tr. 155, 159.

The claimant in a social security case bears the burden of proving disability. *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir. 1997). However, because social security proceedings are nonadversarial, the ALJ is responsible in every case "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* (quoting *Henrie v. Department of Health & Human Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1993)). At the same time, "[t]he ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. . . . The standard is one of reasonable good judgment." *Id.* at 1168 (citing *Glass v. Shalala,* 43 F.3d 1392, 1396 (10th Cir. 1994)). In the *Hawkins* case, the Tenth Circuit Court of

Appeals indicated that isolated and unsupported complaints by the claimant are insufficient to trigger a duty on the part of the ALJ to further investigate the complaints. *Id.* at 1167-68.

Plaintiff's medical records indicate that on January 28, 2000, four months after the accident in which she fractured her right foot, Plaintiff's foot exhibited minimal swelling, and her injury appeared to be healed. Tr. 145. She did, however, complain of pain. *Id.* Approximately one year after her injury, on September 29, 2000, X-rays of Plaintiff's foot showed a "[h]ealing Lisfranc fracture deformity involving the base of the second metatarsal." Tr. 282. On February 6, 2001, Plaintiff's records indicate that she walked with an antalgic gait. Tr. 262. Thus, although Plaintiff's records support a finding that she suffered foot pain and other residual effects of her fracture, I have found no specific indication that she needed to elevate her foot other than her own testimony at the hearing before the ALJ. *See* Tr. 40. In these circumstances, I do not think the ALJ was required to develop the record further in relation to Plaintiff's need to elevate her foot.

## V.  Conclusion and Summary

In sum, I find that the ALJ erred in his step two analysis when he concluded that Dr. Grey Leyba's opinions were entitled to little weight, and when he concluded that Plaintiff does not have a severe mental impairment.

Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct further proceedings, which shall include:

1)   At step two of the sequential five-step analysis, the Commissioner should re-consider the weight that should be assigned to the letter dated November 30, 2000 by Dr. Grey Leyba. In doing so, the Commissioner should consider the factors enumerated in 20 C.F.R. § 416.927.

2)   At step two of the sequential five-step analysis, the Commissioner should also re-

assess whether Plaintiff has a severe mental impairment. In doing so, the Commissioner should consider all significantly probative evidence in the record, and the Commissioner should find that Plaintiff does not have a severe mental impairment only if medical evidence establishes that Plaintiff's impairment has no more than a minimal effect on her ability to perform basic work activities. If the Commissioner finds that Plaintiff had a severe mental impairment during the relevant time period, she should proceed to analyze Plaintiff's mental impairment under the remaining steps in the analysis.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket # 23] is **GRANTED IN PART,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**